**George J. Cotz**  **COTZ & COTZ**  **Lydia B. Cotz**
*Attorneys at Law*
180 Franklin Turnpike
Mahwah, New Jersey 07430
phone (201) 512-9961
fax (201) 512-9963
cotzlaw@aol.com

April 2, 2007

Hon. Charles Breiant,
United States District Court
Southern District of New York
300 Quaropas Street
White Plains, NY 10601

RE: Van Dunk v St Lawrence, et als
    Case No. 07-1999

Honorable Sir;

    I write at this time pursuant to FRCP 15 to request permission to file a Second Amended Complaint at this time, before issue is joined.

    This is an action under **42 USC 2000e** and **42 USC 1983** for racial discrimination and harassment in public employment. Since this action was filed, and served, the Defendants have intensified their harassment of Plaintiff. He has had garbage dumped on his work station; his prior written complaints to the Town Personnel Director have been prominently–but anonymously – posted on the workplace bulletin board; he has been re-assigned to a more difficult and demeaning job, collecting garbage, which is not encompassed by his job title; and he is ostracized on a daily basis. My efforts to communicate with Town officials to end this conduct have been ignored, and my calls not returned. I would like to amend to add these further acts of retaliation, and to join as an additional defendant a supervisor who has initiated some of these actions.

    I enclose a draft Second Amended Complaint, on which I have highlighted the new

material and allegations. I am also copying the Town Attorney with this letter, although he has not yet appeared in the action.

Respectfully,

GJC/hs

cc: Michael Klein, Esq

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT W. VAN DUNK, SR.,

        Plaintiff,

v.

CHRISTOPHER ST. LAWRENCE,
individually and as an Employee of the
TOWN OF RAMAPO; ANTHONY
SHARAN, individually and as an
employee of the TOWN OF RAMAPO;
JAYME KELLY, individually and as
an employee of the TOWN OF RAM-
APO; ED O'CARROLL, individually and
as an employee of the TOWN OF
RAMAPO; and TOWN OF RAMAPO,
a New York Municipal Corporation,

---

CASE NO.: 07-civ-1999

*SECOND AMENDED
COMPLAINT
and
JURY DEMAND*

---

    Plaintiff, Robert W. Van Dunk, Sr, residing at 120 East Eckerson Road, Apartment 1, Spring Valley, New York, complaining of the Defendant says:

### Parties

    1.    Plaintiff is a resident of the Village of Spring Valley in the County of Rockland, State of New York.

    2.    Defendant Christopher St. Lawrence is a resident of the Village of Wesley Hills, Town of Ramapo, County of Rockland, State of New York. He is also the elected Supervisor of the Town of Ramapo.

Page 1 of 16

3. Defendant Anthony Sharan is a resident of the Town of Ramapo, County of Rockland, State of New York. He is also the elected Superintendent of Highways for the Town of Ramapo.

4. Defendant Jayme Kelly is a resident of the Town of Ramapo, County of Rockland, State of New York, and an employee of the ToRHD.

4A. Defendant Ed O'Carroll is, upon information and belief, a resident of the Town of Ramapo, County of Rockland, State of New York, and an employee of the ToRHD

5. Defendant Town of Ramapo is a New York municipal corporation, located in Rockland County, New York, with a principal office at 237 Route 59, Suffern, New York.

## Venue and Jurisdiction

6. This Court has jurisdiction pursuant to 28 USC 1331 as questions arise under Federal statute, to wit, 42 USC 2000(e) and 42 USC 1983 and 42 USC 1985.

7. Venue is properly placed in the Southern District of New York, Westchester vicinage, as all parties are residents in Rockland County, New York.

8. Plaintiff received a right to sue letter from the EEOC on December 20, 2006.

## Factual Allegation

9. Plaintiff has been an employee of the Town of Ramapo, in its Highway

Department ("ToRHD"), since about 1977.

10.  Defendant Town of Ramapo has a custom, usage, pattern and practice of discriminating against people of minority ethnicity who are employed in its Highway Department by giving them less desirable assignments than White employees, tolerating on-the-job racial harassment, favoring White employees for overtime assignments, and by discouraging or preventing their promotion.

11.  Defendant Town of Ramapo has, in the past been named as Defendant in actions by other Highway Department employees, including, but not limited to Glenn VanDunk, Civil Action No.: 97-06465-civ.

12.  Defendant Christopher St. Lawrence has been Supervisor of the Town of Ramapo since December, 2000.

13.  As Supervisor of the Town of Ramapo Defendant St. Lawrence has ultimate executive authority over the ToRHD and all other employees and departments of the Town of Ramapo.

14.  Defendant Anthony Sharan, was until November, 2006, Foreman and acting Superintendent of the ToRHD. Since November 2006 he has been the elected Superintendent of the ToRHD.

15.  Defendant Sharan, at all times relevant, had day to day supervisory authority over Plaintiff.

16.  Plaintiff has been harassed on the basis of race in his employment since he

started at ToRHD. His father, Robert G. Van Dunk, also worked in the ToRHD, and he too was subjected to racial harassment, as is Plaintiff's son, Robert W. Van Dunk, Jr. Other people of color, including but not limited to Greg Sanchez, Glenn Van Dunk (Plaintiff's brother), Robert Gamble, Jr., Jimmy Olsen and Joe Stein, have been subjected to racial discrimination and harassment by Defendants Sharan, Kelly and Defendant Town of Ramapo.

17. Plaintiff has complained to Defendant St. Lawrence on at least one occasion about racial harassment and discrimination directed at him within the Town of Ramapo Highway Department. On February 24, 2006, Plaintiff reported all his difficulties to Defendant St. Lawrence, who called Frank Albaugh a racist, and directed that he be disciplined. Ablaugh was never disciplined.

18. Plaintiff has complained to the Town of Ramapo Personnel Director Linda Condon about racial discrimination and harassment. These complaints were as follows:

    a. On December 17, 2006, about being reassigned from being loader operator during snowstorms, to driving a plow truck, a more strenuous and demanding job.

    b. On December 12, 2006, about the Foreman's refusal to assist him in getting strobe lights transferred to his vehicle.

    c. On October 27, 2006, about a Foreman harassing his son for leaving early when the entire crew left at the same time.

    d. In the fall of 2006, to properly carry out their respective duties as

Provisional Foreman and MEO II in charge of traffic safety, Plaintiff and Defendant Kelly were instructed by Defendant Sharan to cross train each other. Plaintiff did so, but Defendant Kelly refused. Plaintiff complained about this to Linda Condon on September 30, 2006 and on several occasions to Defendant Sharan, but he was never given the training.

  e. On or about February 8, 2007, Plaintiff took a day from work to attend a funeral. When he came into work the next day, he found his office door open, his desk ransacked, the heat switched off, his computer locked and garbage spilled over his desk. Tom Demont has advised Defendant Sharon that all this was done by Defendant Kelly. As of this writing, Kelly has not been disciplined; and Plaintiff was told that *he* would suffer if he pressed for any discipline.

  18. Among the instances of White ToRHD getting more desirable assignments than minority employees are these:

  a. In September 2006, Jayme Kelly became Provisional Foreman in place of Plaintiff, and Plaintiff took over Kelly's former job. Kelly then began assigning work to Plaintiff, that he (Kelly) had never done in that position. Plaintiff's complaints to General Foreman Ralston and Defendant Sharan about this were ignored.

  b. As noted, Kelly was MEO II in charge of traffic safety from 1997 until replaced by Plaintiff ca. September 2006. Since his appointment as Probationary Foreman, he has been allowed to report dozens of signs that require repair or replacement,

Page 5 of 16

adding to Plaintiff's workload. This is strictly harassment, as all of this is work he should have done.

  c. When Plaintiff lost his position as foreman, and lost his position as MEO II for traffic safety, he should have reverted to his former position as street sweeper operated, but the white male who had moved into that position was not disturbed.

  d. On March 28, 2007 Plaintiff was assigned by Defendant O'Carroll to load garbage trucks by hand, a task that is not in his job description as a MEO II.

  19. Among the instances of ToRHD management tolerating racial harassment of minority employees are these:

  a. On October 20, 2006, Jayme Kelly was verbally abusive to Plaintiff in front of General Foreman Ralston and other foremen, who took no action.

  b. On February 24, 2006, Plaintiff reported all his difficulties to Defendant St. Lawrence, who called Albaugh a racist, and directed that he be disciplined. Ablaugh was never disciplined.

  c. When Plaintiff was named Probationary Foreman in October 2005, he was assigned Truck 38, which was old. The tires were bald, and the steering was broken. Frank Albaugh, shop supervisor, refused to make repairs. Plaintiff complained about this to Defendant Sharan who ostensibly took the truck to a tire dealer in February 2006 to have the tires checked. Other foremen's trucks had tires replaced without impediment, and without getting 'second opinions'.

   d. On April 24, 2006, Defendant Sharan instructed Plaintiff, as a Probationary Foreman, to have all CDL drivers move snowplows from one location to another. After Plaintiff gave these directions, Defendant Sharan gave the same directions to the same people, minimizing and undermining Plaintiff. Plaintiff reported this to Condon.

   e. On or about February 26, 1989, Defendant Ed O'Carroll, a foreman, called Plaintiff a "stupid nigger mother fucker". Plaintiff made a complaint, and there was an investigation; but Condon told Plaintiff that there is no record of this.

   f. In the early 1990's, Defendant Sharan referred to Plaintiff as "the little nigger" in a conversation with Robert Taylor.

   g. Gary Wren, sewer superintendent, was verbally abusive to Plaintiff.

   h. After Plaintiff was replaced as Probationary Foreman by Jayme Kelly, Kelly was consistently rude and abrupt with him, even refusing to talk to him. This conduct was displayed in front of Sharan and foremen without any sanctions or disapproval.

   i. On March 21, 2007, after Plaintiff's Complaint had been served on all Defendants, someone unknown posted a number of Plaintiff's written complaints on the bulletin board at the Town Highway Garage. Defendant Sharan tolerated and acquiesced in this, at the least, and only acted to end it after Plaintiff's counsel complained to the Town Attorney's office.

   i. As noted, Kelly was MEO II/traffic safety from 1997 until replaced

by Plaintiff ca September 2006. Since his appointment as Probationary Foreman, he has been allowed to report dozens of signs that require repair or replacement, adding to Plaintiff's workload with work he should have done.

      j.    Defendant Sharan falsely reported to Town attorneys that Plaintiff's son, Robert Van Dunk Jr, was given "preference" for a promotion to MEO II. The truth was that his son was third in the seniority list for the spot, and the first man had failed a drug test, and the second man was ineligible for promotion because he was out on disability.

      k.    On March 26, 2007 Defendant Kelly pressured the Highway Dept. Dispatcher to reveal why Plaintiff left work early on the previous Friday, March 23rd, and told said Dispatcher that he [Kelly] was "going to get" Plaintiff.

20.    Among the instances of White ToRHD employees being favored for promotion over minority employees are these:

      a.    Plaintiff never was "trained" to be a foreman, as many White employees were.

      b.    Whenever a crew had to work without a foreman, the most senior man filled in as Temporary Foreman, and received a premium for that service..For over two years, Sharon allowed a white employee, Tom Demont, who had less seniority than Plaintiff, to serve as Temporary Foreman for their crew, until Plaintiff learned of his rights and objected.

c.  In 2005, Eric Brown, a Black seasonal employee was passed over for a permanent spot in favor of Mike D'Angelo, a White man. Sharan falsely said that this was due to a new policy to hire only people who held CDLs. He has since been hired, even though he has no CDL.

21. Defendant Sharan has engaged in the following acts of harassment:

a.  Plaintiff was entitled by seniority to become a foreman in 2005 when a position opened, and he was made Probationary Foreman in October, 2005, subject to taking and passing the civil service test on April 29, 2006. Defendant Sharan harassed and annoyed Plaintiff on a regular basis between October 2005 and April 2006, impacting his ability to prepare for and pass the test.

b.  When Plaintiff was named Provisional Foreman in October 2005, he was assigned Truck 38, which was old. The tires were bald, and the steering was broken. Frank Albaugh, shop supervisor, refused to make repairs. He complained about this to Defendant Sharan who ostensibly took the truck to a tire dealer in February 2006 to have the tires checked. Other foremen's trucks had tires replaced without impediment.

c.  On April 24, 2006, Defendant Sharan instructed Plaintiff, as a Probationary Foreman, to have all CDL drivers move snowplows from one location to another. After Plaintiff gave these directions, Defendant Sharan gave the same directions to the same people, minimizing and undermining Plaintiff. Plaintiff reported this to Condon.

d.  After Plaintiff was replaced as provisional foreman by Jayme Kelly,

Page 9 of 16

Kelly was consistently rude and abrupt with him, even refusing to talk to him. This conduct was displayed in front of Sharan and foremen without any sanctions or disapproval.

  e. To properly carry out their respective duties as Probationary Foreman and MEO II/traffic safety, Plaintiff and Defendant Kelly were instructed by Defendant Sharon to cross train each other. Plaintiff did so, but Defendant Kelly refused. Plaintiff complained about this to Linda Condon on September 30, 2006 and on several occasions to Defendant Sharan, but he was never given the training.

  f. Defendant Sharan reported that Plaintiff "double billed" overtime for "callouts", by charging for each callout, the common practice of all foremen.

  g. Defendant Sharan falsely reported to Town attorneys that Plaintiff's son was given "preference" for a promotion to MEO II. The truth was that he was third in the seniority list for the spot, and the first man had failed a drug test, and the second man was ineligible for promotion because he was out on disability.

  h. Sharan chastised Plaintiff for marking roadside trees that needed removal with paint, a practice commonly used by all foremen.

  i. On February 28, 2006, Defendant Sharan admitted that he was sarcastic to Plaintiff on two or more times over the radio. He then joked about it with other employees.

  j. On March 3, 2006, after Plaintiff made a complaint about Defendant

Sharan, Sharon told Wren that "Plaintiff wanted his job" and Wren confronted Plaintiff and called him "an asshole" and told him "fuck you".

    k.    In or about January 2006, Defendant Sharan told Plaintiff to put notices in mailboxes in the Hillcrest area, and the next day, he told Plaintiff he was in "big trouble" with the postal authorities for doing so.

22.    Plaintiff's brother, Glenn Van Dunk, was a former employee of ToRHD. In or about 1997, he sued the Defendants Sharon and ToRHD. That lawsuit was resolved by a sealed settlement.

23.    In 1995 Plaintiff brought an action for damages arising from an injury which he sustained as a result of exposure to dangerous chemicals. Defendant Town of Ramapo assigned Deputy Town Attorney Gittleman to investigate and oppose this claim. In 2005 and 2006, she was assigned to investigate Plaintiff's complaints, which was a conflict and showed the Town's .indifference.

24.    On information and belief, Plaintiff's treatment is, in part, retaliation for that earlier complaint about toxic exposure.

25.    On April 29, 2006, Plaintiff was scheduled to sit for the civil service exam for Foreman. Defendant Sharan was aware of this.

26.    In the fall of 2005, and extending into April 2006, Defendant Sharan stepped up and intensified his harassment of Plaintiff. On information and belief, Sharan's purpose was to upset Plaintiff and impede his performance on the civil service exam.

When Plaintiff took the exam, he was upset, agitated and anxious because of Sharan's treatment of him.

27. As a result of the harassment he has suffered on the job, Plaintiff has been forced to seek medical treatment for anxiety.

28. As a result of his mental state, Plaintiff did poorly on the exam.

29. In anticipation of getting a satisfactory score on the exam, Plaintiff, as senior person eligible, was made acting Foreman in September, 2005.

30. As a result of the outcome of the exam, Plaintiff was demoted back to MEO II.

31. As a result of the race-based harassment of Plaintiff, he has suffered severe physical and emotional injury.

32. Defendant St. Lawrence has actual and/or constructive knowledge of all these events, and has done nothing to stop them. On information and belief, he endorsed and supported Defendant Sharon's candidacy for Superintendent of Highways in fall, 2006.

34. Defendant St. Lawrence had a duty to supervise the ToRHD, which he failed to do.

35. Defendant Sharan has actual and/or constructive knowledge of all these events, and has done nothing to stop them.

36. Defendant Sharan had a duty to supervise the ToRHD, which he failed

to do.

## FIRST CAUSE
### (42 USC 2000e)

38.  The conduct of the individual Defendants towards Plaintiff was based on his race, contrary to 42 USC 2000(e).

39.  Defendant has been harmed by the conduct of these Defendants, and has suffered adverse employment actions as a result, including *inter alia*, less desirable assignments, being bypassed for team leader, frequent harassment and the creation of conditions that lead to his failure of the Foremen's test.

WHEREFORE. Plaintiff demands judgment on this Count against all Defendants for compensatory and punitive damages, reasonable counsel fees and costs of suit.

## SECOND CAUSE
### ( 42 USC 1983)

40.  The actions of the individual Defendants Sharan, O'Carroll and Kelly were taken under color of state law, and were contrary to 42 USC 1983.

41.  The actions of Defendants Sharan, O'Carroll and Kelly deprived Plaintiff of his substantive and procedural due process rights, and his right to equal protection of the laws.

42.  Plaintiff has been harmed by the actions of Defendants Sharan, O'Carroll and Kelly, including *inter alia*, less desirable assignments, being bypassed for team leader, frequent harassment and the creation of conditions that lead to his failure of the Foremen's test.

WHEREFORE. Plaintiff demands judgment on this Count against Defendants Kelly, O'Carroll and Sharan for injunctive relief, restoring him to the position of Foreman; compensatory and punitive damages, reasonable counsel fees and costs of suit.

### THIRD CAUSE
### (42 USC 1985)

43. Defendants Sharon, O'Carroll and Kelly did conspire amongst and between themselves, and with other persons unknown, to act under color of state law and otherwise to deprive plaintiff of his civil rights, including his substantive and procedural due process rights, and his rights to equal protection.

44. Plaintiff was harmed by the actions of the actions of the Defendants Sharon O'Carroll and Kelly.

WHEREFORE. Plaintiff demands judgment on this Count against Defendants Kelly, O'Carroll and Sharan for compensatory and punitive damages, reasonable counsel fees and costs of suit.

### FOURTH CAUSE
### (Supervisory Liability)

45. Defendants Town of Ramapo, Sharan and Christopher St. Lawrence have been aware of the improper and illegal treatment suffered by Plaintiff at the hands of Sharan, Kelly and others.

46. Defendants Town of Ramapo and Christopher St. Lawrence have failed to adequately train and supervise its employees, including but not limited to Defendants Sharan and Kelly, as well as Albaugh, Ralston, O'Carroll and others.

47. Plaintiff has been harmed by the failure of the Defendants Town of Ramapo Sharan and St. Lawrence to train and supervise its employees, including *inter alia*, less desirable assignments, being bypassed for team leader, frequent harassment and the creation of conditions that lead to his failure of the Foremen's test..

WHEREFORE, Plaintiff demands judgment on this Count against Defendants Town of Ramapo, Sharan and St. Lawrence pursuant to 42 USC 2000e and 42 USC 1983 for compensatory and punitive damages, reasonable counsel fees and costs of suit.

### FIFTH CAUSE
### (Hostile environment)

48. Plaintiff repeats the allegations of paragraphs 1 to 47 as though set forth at length herein.

49. Plaintiff has been subjected to a racially hostile environment, contrary to 42 USC 2000e.

WHEREFORE, Plaintiff demands judgment on this Count against Defendants Town of Ramapo, Sharan, Kelly, O'Carroll and St. Lawrence pursuant to 42 USC 2000e for compensatory and punitive damages, reasonable counsel fees and costs of suit.

### SIXTH COUNT
### (Retaliation)

50. From time to time after Plaintiff complained to the EEOC, and again after he filed the within action, Defendants or some of them have retaliated against Plaintiff, including assigning him to less desirable work, posting copies of his confidential complaints on the bulletin board, and more.

51.     This conduct is retaliatory for Plaintiff's assertion of his rights, contrary to Title VII, 42 USC 2000e..

WHEREFORE, Plaintiff demands judgment pursuant to 42 USC 2000e against all Defendants on this Count for damages, reasonable counsel fees and costs of suit.

Dated: March 31, 2007                                          COTZ & COTZ

/s/ George J. Cotz 0463
Attorney for Defendants
180 Franklin Turnpike
Mahwah, NJ 07430
Phone 201-512-9961
Fax     201-512-9963

## JURY DEMAND

Defendants hereby demands a trial by jury as to all issues so triable.

Dated:   March 31, 2007

/s/ George J. Cotz 0463